**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**The Estate of Keandre Bost,**

    **Plaintiff,**

**v.**

**Franklin County, et al.,**

    **Defendants.**

**Case No. 2:22-cv-4476**

**Judge Michael H. Watson**

**Magistrate Judge Deavers**

## OPINION AND ORDER

Armor Health of Ohio, LLC ("Defendant") moves for judgment on the pleadings on the Estate of Keandre Bost's ("Plaintiff") Amended Complaint. Mot., ECF No. 51. For the following reasons, the Court **GRANTS IN PART** Defendant's motion.

### I.    FACTS[1]

Plaintiff alleges the following. From September 23, 2021, to December 7, 2021, Keandre Bost ("Bost") was a pretrial detainee at Franklin County Corrections Center I ("FCCC I"). Am. Compl. ¶ 1, ECF No. 46. Defendant was the medical service provider for FCCC I during that time and "owned, operated, maintained and supervised a healthcare facility within FCCC I." *Id.* ¶¶ 25, 29. Bost tragically hung himself in his jail cell on December 7, 2021, and died several

---

[1] The Court accepts Defendant's factual allegations as true for Plaintiff's motion. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

days later. *Id.* ¶ 1. Additional allegations regarding his medical care are addressed below.

## II. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (citing *JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted)).

As with a 12(b)(6) motion, a claim survives a motion for judgment on the pleadings if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A pleading's "[f]actual

allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). The court "must construe the complaint in the light most favorable to the [non-moving party." *Engler v. Arnold*, 862 F.3d 571, 574 (6th Cir. 2017). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

Plaintiff's Amended Complaint asserts multiple claims against multiple parties, but only three claims apply to Defendant: (1) deliberate indifference to a serious medical need, pursuant to 42 U.S.C. § 1983 and *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978); (2) an Ohio survivorship claim; and (3) an Ohio wrongful death claim.

As a preliminary matter, Plaintiff attempts to voluntarily dismiss without prejudice the survivorship claim in its response to Defendant's motion. Resp. 14, ECF No. 55 ("Plaintiff voluntarily dismisses its survivorship claim without prejudice."). Because Defendant has filed an Answer, however, ECF No. 48, Plaintiff cannot unilaterally dismiss claims. *See* Fed. R. Civ. P. 41(a)(1)(a)(i). Nonetheless, the Court construes Plaintiff's response brief as a motion to dismiss without prejudice. Defendant failed to timely reply to its motion for judgment on the pleadings and, accordingly, did not oppose Plaintiff's request for dismissal without prejudice. The Court **GRANTS** Plaintiff's motion and **DISMISSES**

**WITHOUT PREJUDICE** Plaintiff's state-law survivorship claim against Defendant.

The Court thus now considers Plaintiff's deliberate indifference and wrongful death claims.

### A. Deliberate Indifference

Plaintiff alleges that certain unnamed medical staff employees were deliberately indifferent to Bost's serious medical needs and that Defendant is liable for that deliberate indifference pursuant to *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

To state an underlying Fourteenth Amendment claim for deliberate indifference to a pretrial detainee's serious medical need, a plaintiff must establish (1) that he "had a sufficiently serious medical need" and (2) that "each defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (cleaned up).

But, "[a] municipality[2] cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing

---

[2] No party disputes, for purposes of the pending motion, that Defendant acted under color of state law and can be held liable under the same standard that a municipality would be held liable.

*Monell*, 436 U.S. at 691); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("The occasional negligent administration of an otherwise sound policy is not sufficient to impose municipal liability." (internal citation omitted)).

Rather, under *Monell* and its progeny, "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* at 60–61 (quoting *Monell*, 436 U.S. at 691).

The Sixth Circuit recently explained the methods through which a plaintiff can pursue municipal liability as follows:

> There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (internal quotation marks and citations omitted). Under any of these theories, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Cnty. Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 404 (1997). In other words, "to hold a municipality liable under § 1983, a plaintiff must prove that the municipality's policy or custom caused the alleged

injury." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286 (6th Cir. 2020) (internal quotation marks and citations omitted).

The Court first considers whether Plaintiff has alleged that someone employed by Defendant was deliberately indifferent to his serious medical needs, before considering whether Plaintiff has sufficiently alleged the existence of a policy, custom, or practice.

Plaintiff has alleged the "sufficiently serious medical need" prong of a deliberate indifference claim. Defendant agrees and argues solely that the Amended Complaint does not adequately allege that any of its employees took a deliberate act (or deliberately failed to act) and did so recklessly in the face of an unjustifiably high risk of harm that was either known or so obvious that it should be known. The Court agrees.

When the Amended Complaint is distilled, it alleges the following vis-à-vis the medical care Defendant's employees provided to Bost. Upon being booked into FCCC I in September 2021, Bost alerted "staff" of his mental illness and prior suicide attempts, and he told "staff" that he needed psychiatric treatment and medicine. Am. Compl. ¶ 36, ECF No. 46. Several people—who are not defendants in this case and seem to have been corrections officers rather than medical staff—repeatedly changed Bost's classification, gang affiliation, and cell assignment to separate Bost from various other inmates or "due to space issues." *Id.* ¶¶ 38–46, 48.

In mid-October, Bost was transferred to the hospital with "Deputies Hale and a nurse" and was admitted to the hospital. *Id.* ¶ 47. A notation in Bost's file indicates he returned to the jail the next day and was to be "placed in a medical single cell until cleared by medical." *Id.* ¶¶ 49–50. Bost was noted as cleared to return to general population three days later. *Id.* ¶ 51.

On November 9, 2021, Bost was rushed to the Emergency Room after he tried to hang himself. *Id.* ¶ 52. While he was at the hospital, Chanel Caudill[3] made a note in Plaintiff's file directing that he be placed on a safety watch upon his return from the hospital. *Id.* ¶ 53. Bost was, indeed, placed on safety watch upon his return. *Id.* ¶ 54. Then, a note was put in Bost's file to remove him from safety watch after he received an evaluation from mental health. *Id.* ¶ 55. Two days later, Jason Oneto discharged Bost from safety watch and put him on mental health evaluation (November 17, 2021). *Id.* ¶ 57. Mental health staff authorized Bost's removal from mental health observation two days after that (November 19, 2021). *Id.* ¶ 58.

On November 23, mental health staff permitted Bost to have jail clothes, a mat, and a safety blanket, but he needed mental health observation and would be housed in a medical cell. *Id.* ¶ 59. Bost was placed in a medical cell and kept

---

[3] The Amended Complaint references myriad non-parties by name, including Chanel Caudill and Jason Oneto, but contains virtually no explanation for who anyone is or whether they were medical staff, a corrections officer, or was employed in some other capacity.

under mental health observation but was released and transferred to general population the next day. *Id.* ¶¶ 61.

In general population, Bost continued fighting with other inmates, had to be separated from certain inmates, and was sentenced—for various infractions—to twenty-five days in disciplinary lockdown. *Id.* ¶¶ 62–63.

At some point around the end of November 2021, Bost again went to a hospital, but it is not clear when he went, and the Amended Complaint does not state whether it was related to a mental health concern or a different medical concern. *Id.* ¶ 64.

By December 7, 2021, Bost was apparently back from the hospital and back in general population on the eighth floor. *See id.* ¶¶ 65–66. Forty minutes passed between the time Corrections Officers Withrow and Lucas did their final headcount for the night and when Corrections Officer Coffey did his first headcount for the night. *Id.* ¶¶ 67–68. Shortly after Corrections Officer Coffey began his initial headcount, Bost was discovered hanging from his cell bars. *Id.* ¶ 69.

Plaintiff then summarizes the above allegations: "[b]y the time of his second hanging and ultimate suicide, Mr. Bost had been moved over ten (10) times; . . . FCCC I staff had been instructed to keep Mr. Bost away from at least twenty (20) inmates; . . . Mr. Bost had amassed the following alerts: Safety Watch; Mental Health Observation; Pending Disciplinary; SSI; Gang Affiliation; Medical Housing; and Single Cell Housing; . . . Mr. Bost had been taken to the

hospital on at least three prior occasions, one of which was in response to a prior suicide attempt . . . ." *Id.* ¶¶ 71–74. He then alleges that "[m]edical staff employed by Defendant Armor Health of Ohio repeatedly gave mental health authorizations clearing Mr. Bost to return to general population despite his consistent state of mental health crisis . . . [;] failed to offer or procure appropriate intervention and precautions for Mr. Bost's serious, immediate, and life-threatening conditions." *Id.* ¶¶ 76–77.

But, Plaintiff offers no *facts* to support his conclusion that Bost should not have been cleared to return to general population during the periods listed above, or that there were additional mental health treatments that should have been provided. That is, the Amended Complaint alleges nothing more than the dates Bost was put on (or taken off) mental health observation, evaluation, or safety watch. For example, it alleges nothing concerning what was done by medical staff during those periods, how Bost presented, or Bost's condition upon release by medical staff from any of those designations. Instead, Plaintiff's theory seems to be that the very fact that Bost hanged himself, alone, suggests Defendant and its medical staff must have been deliberately indifferent to Bost's serious mental health needs because Bost would not have suicided but for their deliberate indifference. *See id.* ¶ 84 ("The injuries suffered by Keandre Bost were all preventable had Defendants not engaged in illegal conduct in violation of his fundamental rights."); *see also* Resp. 10, ECF No. 55 ("[P]aragraphs 35 through 81 [of the Amended Complaint] outline the illusory medical care rendered

toward Mr. Bost . . .")  As Plaintiff fails to allege any action that medical staff should have taken but did not, or any facts to support its theory that medical staff should not have released Bost from a given period of mental health evaluation, the Amended Complaint fails to show that any medical staff member "acted recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine*, 60 F.4th at 317 (cleaned up). Thus, the flat assertions that the provided medical care was "not enough" fail to state an underlying claim of deliberate indifference to support *Monell* liability. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation." (citation omitted)).

So, the Court does not consider whether the Amended Complaint adequately alleges the existence of a policy, custom, or practice for purposes of *Monell* liability.

## B. Wrongful Death

Defendant argues the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law wrongful death claim. Mot. 12–13, ECF No. 51. Plaintiff responds that requiring him to litigate his claim against Defendant in state court, while litigating his claims against the remaining defendants here, could result in inconsistent verdicts and would waste judicial resources. Resp. 14–15, ECF No. 55.

In this case, the Court has not yet dismissed all claims over which it may exercise original jurisdiction; it has simply dismissed the claims against

*Defendant* over which it has original jurisdiction. The Court therefore defers ruling on whether to exercise supplemental jurisdiction over Plaintiff's state-law wrongful death claim against Defendant and will revisit the issue after ruling on the correctional officer's pending motion for judgment on the pleadings, which is not yet fully briefed.

## IV. CONCLUSION

For the above reasons, Defendant's motion, ECF No. 51, is **GRANTED IN PART**. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's deliberate indifference claim and state-law survivorship claim against Defendant. The Clerk shall terminate ECF No. 51.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**